# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| AUTOMOTIVE GLOBAL TECHNOLOGIES, LTD., a Nevada corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>SONNAX INDUSTRIES, INC., a Vermont corporation; ALTO PRODUCTS CORPORATION, a New Jersey corporation, et al.,<br><br>    Defendants.<br>_____<br>SONNAX INDUSTRIES, INC.,<br><br>    Third Party Plaintiff,<br>vs.<br><br>BRUCE PALMBAUM and CHRISTO BARDIS,<br><br>    Third Party Defendants.<br>_____ | 3:99-CV-065-RAM<br><br><br>**ORDER** |

Before the court is Automotive Global Technologies, Ltd. Motion and Application for Attorneys' Fees and Costs Pursuant to Contract (Doc. #275) and Bill of Costs (Doc. #280). Sonnax Industries, Inc. opposes that motion (Doc. #288), and filed objections to the bill of costs (Doc. #287). Automotive Global Technologies, Ltd. replied to the opposition (Doc. #294) and the objections (Doc. #298). Sonnax also filed a Motion to Strike AGT's Response to Sonnax's Objections to AGT's Bill of Costs. (Doc. #301.)

///

# BACKGROUND

On January 9, 1998, Sonnax Industries, Inc. (hereinafter "Sonnax"), a Vermont corporation, and Automotive Global Technologies, Ltd. (hereinafter "AGT"), a Nevada corporation, contracted for the sale of Component Parts, Inc. (hereinafter "CPI") in the Asset Purchase Agreement (hereinafter "APA"). (Doc. #218.) Prior to the APA, AGT was engaged in the manufacture and sale of torque converter parts through CPI.

The case arose from the APA, and the parties contractual performance duties thereunder. AGT alleged six causes of action against Sonnax, including breach of the APA and interference with their economic relations. (Doc. #218.) Similarly, Sonnax filed six counterclaims against AGT, and Bruce Palmbaum and Christo Bardis, AGT's two shareholders, including breach of the APA. (*Id.*)

The court conducted a bench trial on these claims from May 24, 2002 until June 4, 2002. (Doc. #218.) The court issued its Findings of Fact and Conclusions of Law (hereinafter "FOF") (*id.*) on August 12, 2002. Based on the FOF, the court ordered that judgment be entered against Sonnax in the amount of $202,687.43,[1] plus prejudgment interest. (Doc. #223.) The court also rejected all of Sonnax's counterclaims, with the exception of its claim for the breach of the APA, and ordered judgment be entered against AGT in the amount of $164,300.[2] (*Id.*) Additionally, the court ordered that each party was to bear their own attorney's fees and costs. (Doc. #218.)

On August 26, 2002, AGT, Palmbaum, and Bardis filed a timely motion pursuant to Federal Rules of Civil Procedure 52(b), 59, and 60 (hereinafter "FRCP"). (Docs. # 224-226.) On March 26, 2003, the court amended the judgment against Sonnax to recognize Palmbaum's individual claim based on a consulting agreement, and thus awarding Palmbaum $100,000 and reducing the amount Sonnax owed AGT by the same amount. (Docs. #238, 240.) Accordingly, the amended judgment awarded

---

[1]The FOF and subsequent judgment mistakenly entered judgment against Sonnax in the amount of $212,565.43 and against AGT in the amount of $164,302. (Docs. #218, 219.) The court, however, corrected the clerical mistake in an amended judgment filed on August 20, 2002. (Doc. #222.)

[2]On March 26, 2003, the court amended its judgment against AGT to clarify that AGT alone, and not Palmbaum and Bardis, owed Sonnax $164,300 for breach of the APA. (Doc. #238.)

AGT $102,687.43 and awarded Sonnax $164,300, resulting in a net judgment against AGT and in Sonnax's favor, for $61,612.57. (Doc. #240.)

AGT's motion for attorney's fees and costs under the APA (Docs. #224-226) was denied by the court, stating that "the determination that the parties should bear their own fees and costs remains the same" (Doc. #238; *see also* Doc. #218). However, the court awarded Palmbaum $12,077.95 in attorney's fees and costs for Sonnax's violation of the consulting agreement. (*Id.*) Also, Sonnax's motion for costs (Doc. #221) was denied (Doc. #239) on March 26, 2003, and Sonnax's motion for attorney's fees under the APA (Doc. #244; *see also* Doc. #266) was denied on September 7, 2004 (Doc. #271). The court found that an award of attorney's fees simply because Sonnax obtained a net judgment, even though both AGT and Sonnax breached portions of the APA, would be unreasonable and inequitable under the circumstances. (Doc. #271.)

The Ninth Circuit reviewed the court's decision and issued a mandate on April 29, 2005, which affirmed in part and reversed in part. (Docs. #272-273.) Specifically, the Ninth Circuit held it was error to award Sonnax $90,000 for withheld inventory. (Doc. #272.) They also reversed the award of $74,300 to Sonnax for AGT's alleged failure to deliver or convey machinery. (*Id.*) The reversal of judgment in Sonnax's favor prompted yet another motion for attorney's fees (Doc. #275) and costs (Doc. #280) by AGT. AGT seeks fees in the amount of $345,388.02 and costs in the amount of $46,333.80 for the APA dispute in the district court. (Doc. #275.) They also seek $111,341.94 in fees and $7,481.15 in costs resulting from the appeal to the Ninth Circuit. (*Id.*) AGT's Motion and Application for Attorneys' Fees and Costs is only based on the APA. (*Id.*) They do not renew their claim for fees under the Covenant Not to Compete, which the court previously denied on March 26, 2003. (Doc. #238.)

## LEGAL STANDARD

Under Vermont law, "[t]he American rule ordinarily prohibits an award of attorney's fees absent a specific statutory provision or an agreement of the parties." *Galkin v. Town of Chester*, 716 A.2d 25, 31 (Vt. 1998). When one party prevails over the other, *Roy v. Mugford*, 642 A.2d 688, 696 (Vt. 1994), however, and there is a contract that provides for attorneys' fees, "Vermont courts loathe

3

to revise the agreement struck by the parties and deny them the benefit of their bargain[,]" *Fletcher Hill, Inc. v. Crosbie*, 872 A.2d 292, 294-95 (Vt. 2005); *accord Fusion, Inc. v. Neb. Aluminum Castings, Inc.*, 962 F. Supp. 1392, 1397 (D. Kan. 1997) (citing *United States ex rel. C.J.C., Inc. v. W. States Mech. Contractors*, 834 F.2d 1533, 1548 (10th Cir. 1987)); *see, e.g.*, *Mt. Everest Ski Shops, Inc. v. Nordica USA, Inc.*, 736 F. Supp. 523 (D. Vt. 1989) (hereinafter *Nordica USA, Inc.*). Courts, however, maintain broad discretion to award attorneys' fees pursuant to a contract provision. *United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d Cir. 2004).

Federal civil rights statutes providing for attorneys' fee awards are not the proper standard, "the trial court is not responsible for independently calculating a 'reasonable' fee." *W. States Mech. Contractors*, 834 F.2d at 1548. Although the fee applicant still bears the burden of proving their attorneys' fees and their reasonableness, *see Young v. N. Terminals, Inc.*, 315 A.2d 469, 470 (Vt. 1974), under Vermont law attorneys' fees arising from a breach of contract action are awarded only to the extent to which the contract provides, *Nordica USA, Inc.*, 736 F. Supp. at 527. The court may nevertheless, however, reduce or deny a fee award if it would be unreasonable or inequitable under the circumstances. *Fusion, Inc.*, 962 F. Supp. at 1398; *see, e.g.*, *Blodgett Supply Co. v. P.F. Jurgs & Co.*, 617 A.2d 123, 128-29 (Vt. 1992).

## DISCUSSION

A. Prevailing Party

The first major issue is whether AGT is the prevailing party. AGT claims it is the prevailing party because they obtained some relief on the merits of their claims. (Doc. #275.) Sonnax, however, argues that AGT cannot be considered the prevailing party because AGT failed to win on the majority of their claims, analogizing this case to *Fletcher Hill, Inc. v. Crosbie*, 872 A.2d 292 (Vt. 2005), because "both parties had some success, but neither was a clear victor." (Doc. #288.) *Fletcher* differs, however, because in that case, both parties obtained awards against each other. *Fletcher Hill, Inc.*, 872 A.2d at 296. That did not occur here. Sonnax lost on all of its counterclaims, and obtained no relief against AGT. (Docs. #218, 272.)

4

"Prevailing party" is a term of art when used by courts, *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Res.*, 532 U.S. 598, 615 (2001) (Scalia, J., concurring), and its meaning turns on whether there is a "material alteration of the legal relationship of the parties."[3] *Farrar v. Hobby*, 506 U.S. 103, 111 (1992); *see, e.g.*, *Blodgett Supply Co. v. P.F. Jurgs & Co.*, 617 A.2d 123, 129 (Vt. 1992). Here, AGT has obtained a money judgment for $102,687.43 against Sonnax for a breach of the APA by overcharging AGT on parts, and selling AGT defective torque converter race covers. (Doc. #218.) That outcome was not *de minimis* or merely technical by any account. *See Farrar*, 506 U.S. at 113; *LaRouche v. Kezer*, 20 F.3d 68, 72 (2d Cir. 1994). These were fairly significant issues that were determined in AGT's favor, and benefitted AGT by finally giving it the benefit of its bargain under the APA.

Granted, AGT did not win on all of its claims. (*See* Doc. #288.) As to the APA, the court's finding that AGT was not entitled to recover $982,988.33 in unused parts credits, and that Sonnax had not breached the APA in that respect (Doc. #218), was upheld on appeal (Doc. #272). However, "[a] party need not succeed on every issue raised by him, nor even the most crucial one." *Id.* at 71 (citing *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989); *Hanrahan v. Hampton*, 446 U.S. 754, 757-58 (1980)); *accord Head v. Medford*, 62 F.3d 351, 354-55 (11th Cir. 1995); *see Blodgett Supply Co., Inc.*, 617 A.2d at 129. Limited success does not effect the prevailing party's entitlement to an award of attorneys' fees. *Garland Indep. Sch. Dist.*, 489 U.S. at 790; *see, e.g.*, *Blodgett Supply Co.*, 617 A.2d at 129. Rather, that consideration is more appropriately taken

---

[3]The court finds this approach by the United States Supreme Court does not offend the Vermont Supreme Court's decision in *Blodgett Supply Co. v. P.F. Jurgs & Co.*, 617 A.2d 123 (Vt. 1992). In *Blodgett Supply Co.*, the plaintiffs were the "prevailing party" despite the fact that they only succeeded on one of their three claims, and had problems proving theory of damages. *Id.* at 129. The plaintiffs' lack of success in that case was not an issue, and their status as prevailing parties was consistent with the definition in *Buckhannon*, which deemed that phrase a "term of art." In any event, AGT's position is very similar to the plaintiffs in *Blodgett Supply Co.* AGT has not won judgments on all of their claims, nor have they proved Sonnax breached the APA in each respect they asserted. Even without using the United States Supreme Court's definition of "prevailing party," AGT would nevertheless be a prevailing party under *Blodgett Supply Co.*

5

into account when the court determines the amount of attorneys' fees to award. *Garland Indep. Sch. Dist.*, 489 U.S. at 790; *see, e.g.*, *Blodgett Supply Co.*, 617 A.2d at 129.

Thus, the court finds that AGT is the prevailing party. AGT obtained an enforceable judgment against Sonnax, and that has modified Sonnax's behavior in such a manner that directly benefits AGT. *Farrar*, 506 U.S. at 111; *LaRouche*, 20 F.3d at 71.

B. Reasonable Attorneys' Fees

AGT's Motion and Application for Attorneys Fees and Costs (Doc. #275) argues for attorneys' fees and costs as the prevailing party in this action. It argues that, "[i]n calculating the award of attorney's fees, the court looks to the 'most useful starting point,' the 'lodestar figure,' . . . ." (*Id.*) That, however, is not the starting point when attorneys' fees are provided under a contract clause, as opposed to a statute. *United States ex rel. C.J.C., Inc. v. W. States Mech. Contractors*, 834 F.2d 1533, 1547-48 (10th Cir. 1987); *see Anderson v. Melwani*, 179 F.3d 763, 765 (9th Cir. 1999) (noting the difference between statutory and contractually awarded fees). The underlying policy of such awards in civil rights cases is to "enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws[,]" *W. States Mech. Contractors*, 834 F.2d at 1548, whereas the purpose for enforcing attorneys' fee awards in breach of contact cases is very different.[4]

---

[4]The difference in approach can be seen in *Nordica USA, Inc.*, 736 F. Supp. at 527-28, which was decided under the law of Vermont. That case involved a breach of contract wherein the contract provided for reasonable attorneys' fees to the prevailing party. *Id.* at 525. The plaintiff sued the defendant on multiple theories, including breach of contract and consumer fraud, and the defendant counterclaimed for attorneys' fees. *Mt. Everest Ski Shops, Inc. v. Ski Barn, Inc.*, 736 F. Supp. 531, 531 (D. Vt. 1989) (hereinafter *Ski Barn, Inc.*). Although the defendant prevailed, the court refused to award attorneys' fees for claims brought under a New Jersey consumer fraud act, because they were not based on the parties' contractual relationship as buyer and seller. *Nordica USA, Inc.*, 736 F. Supp. at 528-29. Significantly, the court never discussed whether those claims were "closely related" in a factual sense, or whether they involved "related legal theories," as both AGT and Sonnax do in the instant matter (Docs. #275, 288, 294). *See also Ianelli v. Standish*, 592 A.2d 901, 903 (Vt. 1991) (allowing the defendant to recover fees for claims that fell within the contract language, without regard as to whether they were came from a common core of facts). The court also never discussed the lodestar figure.

The Tenth Circuit explained it best in *Western States Mechanical Contractors*:

> [W]here contracting parties have agreed that a breaching party will be liable for attorneys' fees, the purpose of the award is to give the parties the benefit of that bargain, and the court's responsibility is to enforce that bargain. . . . This does not mean, however, that the trial court should simply award the full amount billed by the prevailing party's attorneys. We reject [the] argument that the contract necessarily requires the recovery of all attorneys' fees. Clearly, the trial court has discretion to adjust or even deny a contractual award of fees if such an award would be inequitable or unreasonable.

*Id.* at 1548 (internal citations omitted); *see also Anderson v. Melwani*, 179 F.3d at 766. That goal was also articulated by the Supreme Court of Vermont in *Fletcher Hill, Inc.*, 872 A.2d at 294 ("Vermont courts are loathe to revise the agreement struck by the parties and deny them the benefit of their bargain"), and a similar approach was employed by that court in *Blodgett Supply Co.*, 617 A.2d at 129 (reducing attorneys' fee award due to the limited success obtained). Considering those parallels in both policy and approach, the court finds that the framework of the Tenth Circuit's opinion in *Western*

---

The line of cases that spawned the expansion of attorneys' fee awards by allowing parties to recover for "closely related" claims or claims that arose from a "common core of facts" came from *Hensley v. Eckerhart*, 461 U.S. at 435. That case involved the vindication of federal civil rights, however, and called for the calculation of attorneys' fees using the lodestar approach. *Id.* at 433. Other cases that the parties rely upon, for example, *Human Rights Comm'n v. LaBrie, Inc.*, 668 A.2d 659, 668-69 (Vt. 1995) and *L'Esperance v. Benware*, 830 A.2d 675, 682-83 (Vt. 2003), also employ the lodestar approach and speak of whether claims come from a "common core of facts" or "related legal theories." Those cases dealt with housing discrimination statutes and the Vermont Consumer Fraud Act, respectively.

Those types of cases are fundamentally different than the instant matter, however, because of the underlying policies which support their deviations from the American Rule. *W. States Mech. Contractors*, 834 F.2d at 1547-48. The parties cannot cite as authority a slew of cases involving attorneys' fees simply because they do. The context matters, and they cannot be treated as if they are all the same absent some showing that they are. *E.g., id.* at 1550 (holding that reasonableness factors used in federal civil rights cases are still relevant in contractual fees cases). This case involves a fee-shifting provision pursuant to a contract, and neither party has cited much case law to that effect. Therefore, those arguments in the parties' briefs which ignore that difference when it is relevant (*e.g.*, Docs. #275, 288, 294), cannot be considered.

7

*States Mechanical Contractors* is instructive in this case for contractual attorneys' fees.[5] Thus, in determining the reasonableness of the attorneys' fee award, the court will attempt to "give them the benefit of their bargain." *Fletcher Hill, Inc.*, 872 A.2d at 294; *accord W. States Mech. Contractors*, 834 F.2d at 1547. The court will not engage in its own independent calculation of a reasonable fee. However, the court may nevertheless determine whether the award of attorneys' fees is reasonable and equitable under the circumstances (*accord* Doc. #271). *Anderson v. Melwani*, 179 F.3d at 766; *W. State Mech. Contractors*, 834 F.2d at 1548; *Cable Marine, Inc. v. M/V Trust Me II*, 632 F.2d 1344, 1345 (5th Cir. 1980). It is based on those considerations that the court concludes that it must deny AGT's request for $510,548.91 in its entirety.

 First, the court finds it would be unreasonable to approve of a full award in light of the results obtained by AGT (Doc. #288). *W. State Mech. Contractors*, 834 F.2d at 1550 (holding that

---

[5] At this time the court addresses both parties' references and arguments under *Wright v. Doolin*, 607 A.2d 1137 (Vt. 1992). (Docs. #275, 288, 294.) In that case, the Supreme Court of Vermont determined that the plaintiffs could recover attorneys' fees for the claims it prevailed on, and for its successful defense against the defendants' counterclaims. *Id.* at 1139-40. That determination was necessary, however, because it was contended that the language of the attorneys' fee provision was limited to the costs of prosecuting the promissory note at issue. *Id.* at 1139. The provision read that, "[i]f this Note is placed in the hands of an attorney *for collection*, a reasonable attorney's fee may be added." *Id.* at 1139 (emphasis added).

 The court need not consider, as the *Wright* court did, whether the four-factor *Kudon* test will allow the recovery of the defense work on counterclaims. The APA fee provision is not party or claim specific. *E.g.*, *id.*; *Kudon v. F.M.E. Corp.*, 547 A.2d 976, 980 (D.C. 1988). The fee provision in this case is sufficiently broad enough, *see Vt. State Colls. Faculty Fed'n v. Vt. State Colls.*, 446 A.2d 347, 349 (Vt. 1982) (stating that contracts "must be interpreted by the common meaning of its words where the language is clear"), it does not specify attorneys' fees for only one party, as the Covenant Not to Compete did (Doc. #278, Exh. B; Doc. #272), nor does it speak in terms of "claims" or "counterclaims," or trial versus appellate work. Section 11.3 of the APA uses very general terms, such as "any action or suit" and "any party." It states:

> In the event of any action or suit based upon or arising out of alleged breach by any party of any representation, warranty, covenant or agreement contained in this Agreement, the prevailing party will be entitled to recover reasonable attorneys' fees and other costs of such action or suit from the other party.

(Doc. #278, Exh. B.)

8

reasonableness factors under federal civil rights cases are still relevant in contractual fees cases); *Fusion, Inc.*, 962 F. Supp. at 1398 (using the "results obtained" to reduce the fee award); *Roy v. Mugford*, 642 A2d 688, 695 (Vt. 1994) (referring to a wide range of factors in determining reasonable attorneys' fees). Indeed, the Supreme Court of Vermont expressly took this factor into consideration in *Blodgett Supply Co.*, 617 A.2d at 129. There, the buyers sued the sellers for breach of contract under three different warranty clauses, *id.* at 124, but prevailed on only one of those claims and lost on a major issue regarding damages, *id.* at 129. Thereafter, the buyers moved for full compensation of their attorneys' fees under the contract. *Id.* at 129. The court denied that request, however, holding "[i]t is clear from the lengthy trial, voluminous record, and the briefs before this Court that significant attorneys' time was expended on damages issues on which plaintiffs did not prevail." *Id.* The court then ordered the trial court on remand to determine the plaintiffs' reasonable attorneys' fees only in relation to those issues they prevailed on. *Id.*

This case bears many similarities to *Blodgett Supply Co.* AGT initiated this suit seeking over one million dollars for Sonnax's breaches of the APA. (Doc. #56.) A significant portion of those alleged damages, $982,988.33, were attributable to the issue of the unused parts credits, and AGT spent significant amounts of time and energy (*see, e.g.*, Docs. #157, 199, 216, 224-226, 272 Exh. A), *even up to this moment* (*see, e.g.*, Doc. #275, 293, 296), litigating that issue to no avail. *See, e.g., Fusion, Inc.*, 962 F. Supp. at 1398 (finding that the plaintiff's recovery of about 3.3% of what it originally sought to be a minimal success). That issue has surely added to the duration and complexity of this case. However, in the end, Sonnax successfully defended against that claim, and just about every other claim (*see* Doc. #218), and the court found that AGT could not recover $982,988.33 for unused parts credits because AGT failed to establish their nonuse of those credits was due to anything other than their own financial inability (Docs. #218, 238). On appeal, even the Ninth Circuit held that there was no breach of the APA in that respect (Doc. #272), and on remand, the court's findings remain unchanged (Doc. #308). Accordingly, the court finds that under *Blodgett Supply Co.* it would be unreasonable to require Sonnax to compensate AGT for those attorneys' fees which pertain issues that

they pushed for nearly six years and failed to prevail on. *Blodgett Supply Co.*, 617 A.2d at 129; *see also Fusion, Inc.*, 962 F. Supp. at 1398.

Second, the court finds it would also be inequitable to award AGT attorneys' fees for their unused credits claim. Not only did AGT fail to prevail on that claim, but they have continually raised that issue,[6] making essentially the same arguments over and over again (*see, e.g.*, Doc. #238). *See Roy v. Mugford*, 642 A.2d at 696 (holding that courts may consider the prevailing party's actions in resolving or failing to resolve the matter before litigation when determining the reasonableness of attorneys' fees). Moreover, this is the second time Plaintiffs' counsel has requested attorneys' fees (*see* Doc. #238), and despite having gone through this process once before when the court expressly found that their motion "border[ed] on bad faith," their counsel has yet again failed to provide adequate documentation of their time (*see* Doc. #278, Exh. B). Quite frankly, the documents provided (*e.g.*, *id.*) do not assure the court that AGT's counsel has made a good faith effort to segregate its claims, and in their current state, there is no meaningful way for the court to segregate claims between different plaintiffs or as between the ten different causes of action.

More importantly, the court finds it would be inequitable to give AGT any of its fees or costs because both parties breached the APA. (*Accord* Doc. #218.) This case is unlike *Roy v. Mugford*, where the Supreme Court of Vermont held that a "[f]ailure to award at least some fees would deny [the prevailing party] the benefit of the contract freely entered into by the [parties]." *Roy v. Mugford*, 642 A.2d at 696. In *Roy*, the plaintiffs contracted to sell a company to the defendants. *Id.* at 659. The defendants executed a promissory note in return, which contained an attorneys' fee clause, but withheld the final payment of $20,000 on that note because the plaintiffs withdrew $20,000 for themselves, as a bonus check, before closing the sale of the company. *Id.* at 690. The plaintiffs eventually sued for collection on the note and triggered the attorneys' fee provision. *Id.* At trial, and on appeal, the defendants argued the plaintiffs were not entitled to attorneys' fees because the

---

[6]In fact, in the court's order on AGT's Motion to Amend the Findings (Doc. #238), the court expressed its frustration with AGT's persistence on that issue.

10

withdrawal of funds constituted a breach of the sale agreement. *Id.* at 690-91. Both courts disagreed, however. The Supreme Court of Vermont held the plaintiffs' withdrawal was legitimate and that the plaintiffs did not engage in any inequitable conduct,[7] *id.* at 692, and then remanded the case for the determination of reasonable attorneys' fees, *id.* at 695-96.

In contrast, both parties are responsible for this prolonged litigation, and neither AGT nor Sonnax was forthright during their performance under the APA. Where both parties act improperly, courts have the discretionary power to disallow attorneys' fee awards, even in the presence of a contractual provision. *United States ex rel DeBlasio Constr. Co. v. Mountain States Constr. Co.,* 588 F.2d 259, 263 (9th Cir. 1978); *accord Anderson v. Melwani*, 179 F.3d at 766; *W. State Mech. Contractors*, 834 F.2d at 1548; *Loman Dev. Co. v. Daytona Hotel & Motel Suppliers, Inc.*, 817 F.2d 1533, 1537 n.7 (11th Cir. 1987); *Cable Marine, Inc.*, 632 F.2d at 1345. In the FOF, the court found that AGT breached the APA in two respects by failing to send broaches, a 3/4" pull-head, and a chuck to Sonnax, and by wrongfully withholding high performance parts. (*Id.*) Contrary to AGT's position (Doc. #294), the Ninth Circuit's opinion did not change that finding. It only reversed the court's award of damages because Sonnax untimely objected to those goods received under the APA.[8] (Doc. #272.) Indeed, 9A Vt. Stat. Ann. § 2-607(3)(a), only precludes the buyer from "any *remedy*" if they fail to seasonably

---

[7]*Blodgett Supply Co.* is also distinguishable from the instant case. As in *Roy*, only one party engaged in wrongful conduct. *See Blodgett Supply Co.*, 617 A.2d at 124. The purchasers of a company sued the sellers after they discovered certain tax accounting errors in the past years which inflated the value of their inventory and increased the purchaser's tax liability. *Id.* The purchasers sued under three different warranty clauses under the sale agreement, *id.* at 124-25, and prevailed on one, *id.* at 126-27. There were no findings that the purchasers breached the sale agreement. It was clear in that case that only one party, the sellers, had engaged in any wrongdoing.

[8]AGT argues that the Ninth Circuit's reversal of damages in favor of Sonnax "effectively annuls or sets aside the lower court's decision for all purposes[,]" (Doc. #294), and on the basis of that reversal, holds itself out as the "only non-breaching party under [sic] APA" (*Id.*). As the court has just discussed, however, the Ninth Circuit's decision did not by any means hold that AGT was the only non-breaching party. In fact, in Part IX of their opinion, they expressly and unambiguously recognize in another context that AGT breached portions of the APA. (Doc. #272.) AGT cannot ignore that fact and the clear wording of 9A Vt. Stat. Ann. § 2-607(3)(a).

11

notify the seller of his breach. It does not alter the fact that the seller *has* breached their agreement, or the fact that the buyer was harmed therefrom; and in this case, AGT's breach harmed Sonnax in the amount of $164,300, which is significant considering that Sonnax's breach of the APA harmed AGT in the amount of $102,687.43. (Doc. #218.) Accordingly, the court's initial grounds for denying attorneys' fees and costs[9] to both parties holds fast because "both AGT and Sonnax were

---

[9] As Sonnax points out (Doc. #288), it is abundantly clear that the Ninth Circuit's opinion expressly stated that "the parties will bear their own costs on appeal" (Doc. #272). Accordingly, AGT is not entitled to any costs on appeal.

Nonetheless, AGT's Motion and Application for Attorneys' Fees and Costs, dated five days after the Ninth Circuit's opinion, argues on page three that "AGT reasonably seeks $345,388.02 for the fees and $46,333.80 for the costs incurred in connection with the APA in the district court, and $111,341.94 for fees and $7,481.15 for costs incurred as a result of the appeal." (Doc. #275.) In the conclusion, AGT argues that it deserves "an order from this Court awarding the fees incurred in the appeal in the total sum or $ [sic] $111,341.94 for fees and $7,481.15 for costs incurred as a result of the appeal." (Doc. #275.) The declaration of Mr. Freidberg is the same, stating that "because of the broad fee/cost provisions, and by virtue of the fact that AGT was forced to pursue through an appeal its meritorious claim for breach of the APA . . . I believe that at least . . . $7,481.15 in costs were incurred on appeal." (Doc. #278 (internal citations omitted).) An argument heading in the Motion even declares that "AGT Is Entitled To Costs Incurred In The District Court, Including Recoverable Appellate Costs In The Sum Of $53,514.95 . . . ." (Doc. #275.) Indeed, AGT's request for a total of $510,548.91 in fees and costs necessarily includes the amount of costs on appeal.

The fact that AGT included their appellate costs in their motion despite the clear expression by the Ninth Circuit is disappointing to say the least. This is especially so in light of the court's previous finding as to Palmbaum's earlier request for attorneys' fees. (*See* Doc. #238 ("[t]he submission by Palmbaum . . . borders on bad faith").) To the court's further dismay, however, AGT now denies ever making the request for its appellate costs and simultaneously accuses Sonnax of misrepresentation. (Doc. #294.) They represent to the court in their Reply brief that:

> AGT . . . wants to make it very clear, again, that they haven't sought costs incurred on appeal. Be it oversight or carelessness, Sonnax misrepresents the same in their moving papers. This Court needn't go any further than reviewing the Freidberg declaration . . . , in conjunction with AGT's Application . . . .

(*Id.*)

Rather than admit to a mistake, AGT chose to deny the truth and point the finger at the opposition in complete disregard of the courts' inherent equitable powers. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991). This type of conduct reflects very poorly on AGT and their counsel, and provides additional support for

12

found to have breached particular sections of the APA." (*Id.*)  Under these circumstances, the court finds it would be both unreasonable and inequitable to award any attorneys' fees and costs to AGT.

### CONCLUSION

**IT IS HEREBY ORDERED** that AGT's Motion and Application for Attorneys' Fees and Costs (Doc. #275) is **DENIED**.

**IT IS FURTHER ORDERED** that Sonnax's Motion to Strike AGT's Response to Sonnax's Objections to AGT's Bill of Costs (Doc. #301) is **DENIED** as moot.

DATED: January 6, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

---

the court's refusal to award any attorneys' fees or costs.

13