UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | | |
|---|---|---|
| AUTOMOTIVE GLOBAL TECHNOLOGIES, LTD., a Nevada corporation, | ) ) ) ) | 3:99-CV-065-RAM |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| SONNAX INDUSTRIES, INC., a Vermont corporation; ALTO PRODUCTS CORPORATION, a New Jersey corporation, et al., | ) ) ) ) ) | |
| Defendants. | ) ) | |
| SONNAX INDUSTRIES, INC., | ) ) | |
| Third Party Plaintiff, vs. | ) ) ) | |
| BRUCE PALMBAUM and CHRISTO BARDIS, | ) ) ) | |
| Third Party Defendants. | ) ) | |

Before the court is Sonnax Industries, Inc. Objection to AGT's Proposed Judgment (Doc. #289) filed on August 2, 2005. Automotive Global Technologies, Ltd. filed a response (Doc. #293) to those objections in conjunction with a request for judicial notice (Doc. #296). Sonnax Industries, Inc. replied. (Doc. #302.)

## BACKGROUND

On January 9, 1998, Sonnax Industries, Inc. (hereinafter "Sonnax"), a Vermont corporation, and Automotive Global Technologies, Ltd. (hereinafter "AGT"), a Nevada corporation, contracted

for the sale of Component Parts, Inc. (hereinafter "CPI") in the Asset Purchase Agreement (hereinafter "APA"). (Doc. #218.) Prior to the APA, AGT was engaged in the manufacture and sale of torque converter parts through CPI.

The case arose from the APA, and the parties contractual performance duties thereunder. AGT alleged six causes of action against Sonnax, including breach of the APA and interference with their economic relations. (Doc. #218.) Similarly, Sonnax filed six counterclaims against AGT, and Bruce Palmbaum and Christo Bardis, AGT's two shareholders, including breach of the APA. (*Id.*)

The court conducted a bench trial on these claims from May 24, 2002 until June 4, 2002. (Doc. #218.) The court issued its Findings of Fact and Conclusions of Law (hereinafter "FOF") (*id.*) on August 12, 2002. Based on the FOF, the court ordered that judgment be entered against Sonnax in the amount of $202,687.43,[1] plus prejudgment interest. (Doc. #223.) The court also rejected all of Sonnax's counterclaims, with the exception of its claim for the breach of the APA, and ordered judgment be entered against AGT in the amount of $164,300.[2] (*Id.*) Additionally, the court ordered that each party was to bear their own attorney's fees and costs. (Doc. #218.)

On August 26, 2002, AGT, Palmbaum, and Bardis filed a timely motion pursuant to Federal Rules of Civil Procedure 52(b), 59, and 60 (hereinafter "FRCP"). (Docs. # 224-226.) On March 26, 2003, the court amended the judgment against Sonnax to recognize Palmbaum's individual claim based on the Consulting Agreement, and thus awarding Palmbaum $100,000 and reducing the amount Sonnax owed AGT by the same amount. (Docs. #238, 240.) Accordingly, the amended judgment awarded AGT $102,687.43 and awarded Sonnax $164,300, resulting in a net judgment against AGT and in Sonnax's favor, for $61,612.57. (Doc. #240.)

---

[1]The FOF and subsequent judgment mistakenly entered judgment against Sonnax in the amount of $212,565.43 and against AGT in the amount of $164,302. (Docs. #218, 219.) The court, however, corrected the clerical mistake in an amended judgment filed on August 20, 2002. (Doc. #222.)

[2]On March 26, 2003, the court amended its judgment against AGT to clarify that AGT alone, and not Palmbaum and Bardis, owed Sonnax $164,300 for breach of the APA. (Doc. #238.)

2

The Ninth Circuit reviewed the court's decision and issued a mandate on April 29, 2005, which affirmed in part and reversed in part. (Docs. #272-273; *see also* Doc. #274.) Specifically, the Ninth Circuit held it was error to award Sonnax $90,000 for withheld inventory "because Sonnax waived the right to contest the value of the inventory . . . [b]y waiting fifteen months to raise the issue . . . ." (*Id.*) They also reversed the award of $74,300 to Sonnax for AGT's alleged failure to deliver or convey machinery, and again holding that "Sonnax waived the right to raise the issue of imperfect tender by failing to provide seasonable notification to AGT." (*Id.*)

The reversal of judgment in Sonnax's favor prompted yet another motion for attorney's fees and costs (Doc. #275; *see also* Doc. #280) by AGT. On June 29, 2005, AGT also submitted a Proposed Amended Judgment Following Appeal and Remand (Pls. Proposed J.) to the court.

## DISCUSSION

AGT's Proposed Judgment contains three major points for amendment.[3] First, AGT claims their award of $102,687.43 has accrued prejudgment interest of 12% per annum, which amounted to $63,913.74 as of June 27, 2005.[4] (Pls. Proposed J.) Second, AGT claims they, or Bardis, are entitled to recover the remaining balance of unused credits under the APA, worth $982,988.33. (*Id.*) Third, AGT claims they are now entitled to attorneys' fees because they are the prevailing party. (*Id.*)

A. The Filings

Sonnax argues that AGT's Proposed Judgment is improper because AGT failed to provide them adequate notice, and did so without good cause. (Doc. #302; *see* Docs. #283-284.) Sonnax also objects to AGT's Response to Sonnax's Objections to AGT's Proposed Judgment on the grounds that it was not authorized. (Doc. #302.) However, the court previously determined AGT could submit a proposed judgment and the court would entertain whatever objections and responses thereto at a status conference on July 7, 2005. (Doc. #285.) Both parties were present at that conference. The court also gave both parties ample opportunity to respond to each other's papers. For example, Sonnax

---

[3]Judgments in favor of Palmbaum were not amended. (Pls. Proposed J.; Doc. #272.)

[4]According to AGT, interest accrues on their judgment award at a rate of $33.76 per day.

3

1 was allowed to file their objections after thirty-four days.[5] As such, these objections are without merit
2 and are therefore overruled.

### B.  AGT's Claim for Prejudgment Interest

As a general rule under Vermont law, "[p]rejudgment interest may be awarded as damages for detention of money due for breach of default. . . . [I]nterest runs from the time of maturity or demand for payment or from the time of default, which may be the time that the action is commenced." *Herbert v. Town of Mendon*, 617 A.2d 155, 159 (Vt. 1992) (internal citations omitted). Here, Sonnax argues that AGT should be precluded from collecting prejudgment interest during the six month period in which their claim was subject to the levy of the Internal Revenue Service (hereinafter "IRS"). (Doc. #298.) The court, however, must reject that argument because Sonnax has not cited to any relevant authority that would require the court to toll or exclude the amount of accrued prejudgment interest in this instance.

Essentially, Sonnax relies on *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 725 (1985), for the proposition that since the IRS "stepped into AGT's shoes" via the tax lien, only the IRS is entitled to the prejudgment interest that accrued up until it was extinguished on March 28, 2002. (Docs. #289, 302.) Sonnax's reliance on *Nat'l Bank of Commerce*, however, is misplaced. When the Supreme Court held that the "IRS '"steps into the taxpayer's shoes,"'" *Nat'l Bank of Commerce*, 472 U.S. at 725 (quoting *United States v. Rodgers*, 461 U.S. 677, 691 n.16 (1983)), they were speaking in terms of what property interests as defined by state law could be subject to a federal tax lien. *Id.* There is nothing in that principle, or anywhere else in federal law, *id.* at 722 (stating that federal law defines the tax consequences of tax liens), that would allow the IRS to step in and then out of the shoes of the delinquent taxpayer taking more than what it was owed. *See id.* at 725. To the contrary, when the a federal tax lien is satisfied through payment, the IRS steps out of the taxpayer's shoes barefoot.

---

[5]In a letter, Sonnax indicated that they "intend[ed] to treat [the Proposed Judgment] as a motion, and [would] respond in the time period permitted by the court's [local] rules" (Doc. #283), but the Local Rules provide that oppositions be filed within fifteen days after service of the motion unless otherwise ordered by the court. L.R. 7-2(b).

4

The other two cases Sonnax refers to are also unhelpful. In both instances, the taxpayers did not satisfy the liens and the federal government foreclosed on the delinquent taxpayers' properties. *See generally Kane v. Capital Guardian Trust Co.*, 145 F.3d 1218 (10th Cir. 1998); *United States v. Stonehill*, 83 F.3d 1156 (9th Cir. 1996). That did not occur here. All parties concede that AGT satisfied the federal tax lien (Docs. #289, 293). *See* 26 U.S.C. §§ 6322, 6325 (2005). The subsequent release of the lien gave AGT clear title to the judgment award in this case. 26 U.S.C. §§ 6325, 6337(a) (2005) ("[a]ny person whose property has been levied upon shall have the right to pay the amount due . . . and upon such payment the Secretary shall restore such property to him . . ."); *see Denham v. United States*, 811 F. Supp. 497, 501 (C.D. Cal. 1992) (stating that parties can obtain clear title by voluntarily satisfying a tax lien). Accordingly, AGT is entitled to the prejudgment interest that accrued from October 2001 until March 2002. Sonnax's objection is overruled.

C.  <u>AGT's Claim for Unused Credits</u>

Sonnax second objection (Doc. #289) is to Plaintiffs' assertion that they "'can recover the remaining balance' of the unused credits owed under the [APA], presently totaling $982,988.33, at Sonnax's best price" (Pls. Proposed J at 2). Sonnax argues the court rejected that request twice before, and that that issue was never raised on appeal. (Docs. #289, 302.) According to AGT, however, they did preserve the issue on appeal and the Ninth Circuit unambiguously held that they could recover the remaining balance of credits. (Doc. #293.)

    1. Ninth Circuit Rule 27-10

AGT prefaces their position with Ninth Circuit Rule 27-10[6] (Doc. #293) because at one point, Sonnax states that "AGT's attempt to rely on *ambiguous* language in the Ninth Circuit's Memorandum Decision is unavailing." (Doc. #289 (emphasis added).) Based on that rule, AGT argues Sonnax's objection is improper and should have been brought before the Ninth Circuit in a motion for

---

[6] Motions for clarification or reconsideration of a court order must be brought under Ninth Circuit Rule 27-10 within fourteen days of the date of order, and "[a] party seeking relief under this rule shall state with particularity the points of law or fact which, in the opinion of the movant, the court has overlooked or misunderstood . . . ." Ninth Cir. R. 27-10(a).

clarification or reconsideration. (*Id.*) However, Sonnax's argument should not be dismissed for failing to raise the alleged ambiguity at the appellate level because the parties' different interpretations of the Ninth Circuit's opinion did not become apparent until the case was remanded and AGT submitted their Proposed Judgment. Under these circumstances the court may consider the proper interpretation of Part III of the Ninth Circuit's decision. *See, e.g.*, *Syufy Enter. v. Am. Multi-Cinema, Inc.*, 694 F. Supp. 725, 727 (N.D. Cal. 1988) (interpreting a "somewhat ambiguous" opinion of the Ninth Circuit on remand).

### 2. AGT's Notice of Appeal

Sonnax's first objection is that AGT failed to appeal the court's finding that the unused parts credits did not carry forward from year to year. (Doc. #289.) According to Sonnax, AGT only appealed the court's finding that AGT could not convert unused parts credits into cash. (Doc. #302.) The court rejects that argument, however, because AGT's Notice of Appeal to the United States Court of Appeals for the Ninth Circuit (Doc. # 241) expressly mentions their Motion to Amend Findings, for New Trial, and their Motion for Relief of Judgment (Docs. #224-226), in which those issues were raised. AGT's Notice of Designation of Reporter's Transcript and Statement of the Issues on Appeal specifically also states that AGT "intend[ed] to appeal . . . [w]hether AGT and Palmbalm are entitled to additional damages of almost $1 million in unused credits." (Doc. #245.) That argument necessarily included the sub-issue of whether their unused parts credits carried forward from year to year, and further indicated that "[a]ny sub-issues encompassed by the issues set forth above are deemed set forth above." (*Id.*) Last, upon review of the Appellants' Brief (Doc. #289, Exh. A at 31-32, 48), the court finds that AGT submitted those issues and argued its position to the Ninth Circuit.

### 3. Recovery of the Unused Credits under the APA

The focus of AGT's argument lies within Part III of the Ninth Circuit's opinion, where they stated that "AGT can recover the remaining balance only through the use of the credits unless Sonnax refuses to provide payment in the form of goods." (Doc. # 272.) According to AGT, that holding unambiguously entitles them to $982,988.33 in parts credits for its remaining balance of unused

6

credits. (Doc. #293.) Sonnax argues that AGT misinterprets that holding by taking that statement out of context. (Doc. #289.)

The relevant portion of the Ninth Circuit's opinion in this case, Part III, states:

> The district court properly refused to award AGT the remaining sales price on the [APA] in cash rather than through part credits. The [APA] does not provide for the unused credits to be converted into cash under any circumstances, including termination of the agreement. *See Roy's Orthopedic, Inc. v. Lavigne*, 487 A.2d 173. 175 (Vt. 1985) (stating that courts are required to enforce contracts as they are written and cannot ignore their provisions). AGT can recover the remaining balance only through the use of the credits unless Sonnax refuses to provide payment in the form of goods. Consequently, there has been no breach of the [APA]; any failure of delivery of discounted parts was simply due to the inability of AGT to purchase them.
>
> The district court did not clearly err when it found that the contract was never terminated. This factual finding and the district court's determination that AGT was not ready, willing, and able to pay for the parts available to it under the agreement resolve AGT's arguments regarding the Vermont U.C.C. and unjust enrichment. *See* 9A Vt. Stat. Ann. §§ 2-610, 206-7(1) & 2-709; *Mercia v. Billings*, 238 A.2d 636, 637-38 (Vt. 1968.)

(Doc. #272 (footnote omitted).) That opinion makes two things abundantly clear: (1) AGT can*not* recover unused parts credits in the form of cash unless Sonnax breached the APA by refusing to honor AGT's use of the credits; and, (2) AGT did not use all their parts credits through no fault of Sonnax but because they were financially unable to. (*Id.*) Those conclusions are consistent with the court's original FOF, which found that "in order for AGT to recover the monetary value of such credits, AGT was required to show it did not use the credits *because* of Sonnax's overcharges . . . [and that] it was AGT's financial position . . . , and not Sonnax's mark-up on prices, that resulted in the lack of use of credits." (Doc. #218 at 11, ¶7.) Thus, the fact that AGT cannot recover any money or cash for their unused parts credits is clear and uncontested. (*See also* Doc. #293 (admitting that any recovery would have to be through parts credits).)

The Ninth Circuit's opinion, however, does not expressly nor by necessary implication address whether AGT can recover anything other than money, such as parts credits, for their unused parts credits, and if so, whether their recovery would account for the five year period in question. AGT's claim that they held that "AGT can recover the remaining balance owed by Sonnax, albeit through

7

the use of parts' [sic] credit" (Doc. #293) takes the Circuit's opinion out of context, and treats one part of a sentence as an island (*see id.*)  There is no judicial canon or tool of interpretation or construction to support that practice.  *See, e.g.*, *Flores v. Am. Seafoods Co.*, 335 F.3d 904, 910 (9th Cir. 2003) (holding that "written contract[s] must be read as a whole and every part interpreted with reference to the whole"); *Wilderness Soc. v. United States Fish & Wildlife Serv.*, 316 F.3d 913, 932 (9th Cir. 2003) (holding that statutes are to be read as whole); *N. L. R. B. v. TRW-Semiconductors, Inc.*, 385 F.2d 753, 760 (9th Cir. 1967) (reading statements made by an employer as a whole in determining whether they constituted a threat).   The memorandum decision only speaks about whether AGT could recover money for their unused parts credits.

Indeed, there is no evidence that AGT ever asked for relief in any form other than money.  For example, in AGT's Proposed Findings of Fact and Conclusions of Law (Doc. #216), AGT specifically requested "the right to recover the *monetary value* of the unused credits . . . ." (*Id.* (emphasis added)) In a motion *in limine*, AGT claimed that "Sonnax may argue that any damages award to Global must be in 'parts' or 'parts' credits . . . [,] [but that] argument[] would be a distortion of the law . . . ." (Doc. #157.)  They also stated that they "[did] not intend to seek the 'lost profit' that it would have made from the resell of the Sonnax 'credit[,]' [rather, AGT] presently intends to recover damages based upon the contracted for, and agreed upon value, of the bargained for 'credit.'" (*Id.*)   To further illustrate this point, AGT's motion to amend the court's FOF argued that "[b]ecause AGT and Palmbaum are entitled to their unused credits, they hereby move the court for an amendment to the findings, conclusions and *monetary* judgment to properly reflect" an award for $982,988.33.  (Doc. #224.)  Finally, their appellate brief only contested "[t]he district court's refusal to award AGT the *moneys* still owed" for the unused credits. (Doc. # 289, Exh. A.)  Thus, because AGT never argued in the alternative or for anything other than monetary reimbursement for its unused credits at the trial court level, *see Galvan v. Alaska Dept. of Corr.*, 397 F.3d 1198, 1204 (9th Cir. 2005) ("[c]ourts generally do not decide issues not raised by the parties"); *Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1107 & n.5 (9th Cir. 1987) (stating that it would be "inappropriate" to decide an issue on appeal "when the district court ha[d] not addressed [it]"); *see, e.g.*, *Rui One Corp. v. City*

8

*of Berkeley*, 371 F.3d 1137, 1152 (9th Cir. 2004) (refusing to entertain an issue on appeal that was not argued before the district court); *but see Whittaker Corp. v. Execuair Corp.*, 736 F.2d 1341, 1346 (9th Cir. 1984) (noting that courts have discretion to reach issues for the first time on appeal where no new facts are needed), or before the Ninth Circuit, *Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc.*, 752 F.2d 1401, 1404 (9th Cir. 1985) (holding that appellate courts do not consider issues that are not "specifically and distinctly raised and argued" in the briefs), the Ninth Circuit could not have decided that issue in their favor.[7]

It then follows that there was no need for the Circuit to decide whether the unused parts credits carried forward from year to year—and indeed, they did not decide that issue—because the Circuit held AGT could not recover money for the parts credits, and because AGT never asked for any other form of relief. The court's original FOF therefore remain in tact. *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979) (holding that lower courts may "consider and decide any matters left open by the mandate of [appellate] court[s]"); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939). Simply put:

---

[7]Viewing other documents filed almost simultaneously with AGT's Proposed Judgment also supports the court's finding that AGT has misread the Ninth Circuit's opinion. For example, in AGT's Motion and Application for Attorneys' Fees and Costs, they specifically recite their position was that "AGT expressly reserved the rights to recoup the *moneys* owed, and because of Sonnax's ongoing breach, AGT was not required to fully exercise its credits in any given year." (Doc. #275 (emphasis added).) In the following paragraph, AGT then claims that "the [Ninth] Circuit adopted AGT's argument that it is entitled to use its unused credits when it held that AGT can recover unused credits in the future . . . ." (*Id.*)

There are several points, however, which must be clarified by the court. First and foremost, AGT's main claim was that it "expressly reserved the rights to recoup the moneys owed," but nowhere in the Ninth Circuit's opinion do they acknowledge or adopt that argument. (*Compare id. with* Doc. #272.) Further, even if the court were to assume the Ninth Circuit held that AGT could still use its unused credits, that holding was not an "adopt[ion] [of] AGT's argument . . . ." As previously discussed, AGT never argued for anything other than "the *moneys* owed" and that claim was expressly rejected in their decision. (Doc. #272.) Second, the Ninth Circuit specifically held that "there ha[d] been no breach of the [APA] . . . ." (Doc. #272.) That holding is totally opposite to AGT's claim of "Sonnax's ongoing breach," an allegation that AGT used to justify their argument.

9

> [T]he law of the case established by a prior appeal does not extend to preclude consideration of issues not presented or decided on the prior appeal. The law of the case doctrine 'does not include all questions which were present in a case and which might have been decided but were not.' '[T]he doctrine of the law of the case applies only to the issues decided, not to all those presented for decision but left answered.'

*Conway v. Chem. Leaman Tank Lines, Inc.*, 644 F.2d 1059, 1062 (5th Cir. 1981) (internal citations omitted).

To be completely clear and avoid further confusion on these issues, the court finds the following:

- AGT cannot recover a monetary judgment for their unused credits because it was their poor financial status that prevented AGT from exercising them. (Docs. #218, 272.) Sonnax did not breach the APA in that respect. (Docs. #218, 272.)

- AGT cannot recover the credits themselves because the "unused credits did not carry forward to the next year, [and the] failure to use a year's worth of credits . . . resulted in a loss of those credits." (Doc. #238.)

- Even though there was no specific forfeiture clause in the APA, unused credits did not carry-over because the APA was expressly limited to five years. (Doc. #218; *id.*) Section 3.4.3 of the APA specifically stated that the "[c]redit shall be *available for use* by [AGT] in a maximum amount per year equal to one-fifth of the [credit] *for each of the five (5) years immediately following the closing*." Also, to allow credits to carry forward from year to year would have obviated the purpose of preventing AGT from exercising all their credits at once and protecting Sonnax from the possibility of economic hardship. (Doc. #218.)

D. AGT's Claim for Attorneys' Fees and Costs

AGT's third amendment claims entitlement to attorneys' fees and costs as the prevailing party. (Pls. Proposed J.) Both parties have extensively briefed that issue in motions and oppositions outside of Sonnax's objections to AGT's Proposed Amended Judgment. The court will therefore deal with that issue independently in a separate order. (Doc. #306)

///

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendant Sonnax's Objections to AGT's Proposed Judgment (Doc. # 289) are **SUSTAINED IN PART** and **OVERRULED IN PART**.

**IT IS HEREBY FURTHER ORDERED** that the parties shall submit an agreed upon Judgment consistent with this Order within twenty (20) days of the date of this Order.

DATED: January 6, 2006.

_____
UNITED STATES MAGISTRATE JUDGE